UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
Charles Robert, II, pro se,                                       :
                                                                  :
                    Plaintiff,                                    :   **OPINION**
                                                                  :   **AND ORDER**
            -against-                                             :
                                                                  :   01-CV-4778 (DLI)
Department of Health and Human Services,                          :
                                                                  :
                    Defendant.                                    :
------------------------------------------------------------------x

**DORA L. IRIZARRY, U.S. District Judge:**

Plaintiff, a suspended attorney, has represented disabled persons in unsuccessful challenges to the New York State Department of Health Medicaid[1] policy that, before a supplemental needs trust[2] may be created with settlement proceeds, outstanding Medicaid liens[3] must be paid. In this Freedom of Information Act (FOIA) lawsuit, plaintiff seeks access to two documents, totaling

---

[1] The Medicaid program was created by Congress in 1965 and codified in Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq*. States may voluntarily participate in the Medicaid program but must comply with Title XIX requirements. *Harris v. McRae*, 448 U.S. 297, 100 S. Ct. 2671, 65 L. Ed. 2d 784 (1980).

[2] A "supplemental needs trust" is "a discretionary trust established for the benefit of a person with a severe and chronic or persistent disability." N.Y. EST. POWERS & TRUSTS LAW § 7-1.12(a)(5). It is "designed to enhance the quality of the disabled individual's life by providing for special needs without duplicating services covered by Medicaid or destroying Medicaid eligibility." *Cricchio v. Pennisi*, 90 N.Y.2d 296, 303 (1997) (citing Bill Jacket, L. 1993, ch. 433).

[3] To be eligible for Medicaid, applicants must assign to the State any rights "to support (specified as support for the purpose of medical care by a court or administrative order) and to payment for medical care from any third party." 42 U.S.C. §1396k(a)(1)(A). Pursuant to N.Y. SOC. SERV. LAW §104-b, where a person has received Medicaid assistance, the Department of Social Services may seek reimbursement of these costs indirectly by placing a lien on any personal injury lawsuits instituted by Medicaid recipients against responsible third parties. The Department of Social Services may also pursue a claim directly against the responsible third parties. *Calvanese v. Calvanese*, 93 N.Y.2d 111, 117 (1999).

1

thirteen pages, withheld by the defendant, Department of Health and Human Services (HHS), following the FOIA request he filed on August 27, 1997. The two documents withheld under FOIA were identified by HHS as responsive to plaintiff's request for documents relied upon by then-Medicaid Director for the Health Care Financing Administration (HCFA),[4] Sally Richardson, in preparing two items of correspondence: (1) a December 30, 1993 letter to Assistant General Counsel Howard Gibbs of the New York City Human Resources Administration, and (2) a June 5, 1996 memorandum to State Medicaid Plan Directors. Defendant moves for summary judgment, arguing that both documents were properly withheld. In plaintiff's opposition to defendant's motion, he advances several arguments, none of which the court finds convincing. For the reasons set forth below, the court grants defendant's motion.

**I. Background**

The first document withheld, as described by HHS, is a one-page request from "an operating division" of HHS to the Office of General Counsel, "seeking review and comment" on an attached three-page draft document. (Cirrincione Decl. ¶ 8.) The second document withheld is a nine-page response from the HHS Office of General Counsel to the HHS "operating division" that contains "legal advice, analysis, and proposed draft revisions." (*Id*.) In withholding these documents, HHS claimed deliberative process and attorney-client privileges pursuant to FOIA Exemption 5. *See* 5 U.S.C. § 552(b)(5). HHS denied plaintiff's appeal of the decision to withhold the documents by letter dated June 21, 2001. However, by letter dated December 21, 2001, HHS decided to make a

---

[4] The Health Care Financing Administration is now called "Centers for Medicare & Medicaid Services," or "CMS."

discretionary release of the one-page request for review and comment in its entirety, but without the three-page draft, and part of one page of the nine-page response. The portion released from the nine-page response included the addresses, the subject, and the first three sentences of the first paragraph.

According to plaintiff, the documents withheld would reveal whether HHS staff attorneys determined that Medicaid liens should be recovered according to a "pro rata share" or "priority" standard when supplemental needs trusts are established. Under the priority standard that has been applied by recent New York Court of Appeals decisions, a plaintiff with a Medicaid lien equal to or more than the settlement amount may not have any amount remaining for a supplemental needs account. *See, e.g.*, *Calvanese v. Calvanese*, 93 N.Y.2d 111 (1999); *Cricchio v. Pennisi*, 90 N.Y.2d 296 (1997). For example, if a plaintiff settled a tort action for $300,000 but had a $400,000 Medicaid lien, the full $300,000 might have to be applied towards paying the Medicaid lien. However, as pointed out in the *Calvanese* case, the Department of Social Services fixes the actual amount of the lien and may, as part of the settlement, release and discharge the lien or agree to accept a lesser amount for its satisfaction. N.Y. SOC. SERV. LAW § 104-b(1), (7); 90 N.Y.2d at 121. Plaintiff alleges that "HCFA employees clandestinely implemented *policy* standards contrary to the duly promulgated regulatory standards in violation of the Administrative Procedure Act." (Compl. ¶ 43, emphasis in original.)

**II. Standards of Review and Law**

A district court reviews the withholding of records by a government agency de novo "and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth [in the FOIA statute]." 5

U.S.C. § 554(a)(4)(B). The government agency bears the burden of justifying its nondisclosure. *See id.*; *Massey v. F.B.I.*, 3 F.3d 620, 622 (2d Cir. 1993). "Affidavits or declarations supplying facts indicating that the agency has conducted a thorough search and giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden." *Carney v. United States Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994). There is a presumption of good faith regarding affidavits submitted by a government agency and, therefore, the court may award summary judgment if the agency's affidavits are "adequate on their face." *Id*. Summary judgment is appropriate where affidavits "contain *reasonable specificity* of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999) (emphasis in original).

In accordance with the FOIA's goal of providing for disclosure, statutory exemptions must be interpreted narrowly. *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8, 121 S. Ct. 1060 (2001). Exemption 5 under the FOIA applies to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption includes privileges available in the civil discovery context such as the attorney-client, attorney work-product, and deliberative process privileges. *See, e.g.*, *Klamath Water Users*, 532 U.S. at 8; *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S.132, 154, 95 S. Ct. 1504 (1975).

In withholding the two documents, HHS claimed the deliberative process and attorney-client privileges. The purpose of the deliberative process privilege "is to enhance the quality of agency decisions, by protecting open and frank discussion among those who make them within the

4

Government." *Klamath Water Users*, 532 U.S. at 9 (internal quotation marks and citations omitted). The privilege also exists

> to protect against premature disclosure of proposed policies before they have been finally formulated or adopted; and to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action.

*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). The privilege generally protects "recommendations, draft documents, proposals, suggestions, and other subjective documents" that "reflect the personal opinions of the writer rather than the policy of the agency." *Ethyl Corp. v. United States Envtl. Protection Agency*, 25 F.3d 1241, 1248 (4th Cir.1994) (quoting *Coastal States*, 617 F.2d at 866).

For the deliberative process privilege to apply, the FOIA material must be both "predecisional" and "deliberative." *Grand Cent. P'ship*, 166 F.3d at 482. "A document is predecisional when it is prepared in order to assist an agency decisionmaker in arriving at his decision." *Id*. (internal quotation marks and citations omitted). The document must be central rather than peripheral to the policy-making process, *see id*., and it must have been "generated before the adoption of an agency policy." *Coastal States*, 617 F.2d at 866. A document is "deliberative" when it "reflects the give-and-take of the consultative process." *Id.* Opinions, recommendations, and advice are considered "deliberative," while factual data and evidence are not. *See United States v. Fernandez*, 231 F.3d 1240, 1246–47 (9th Cir. 2000).

The attorney-client privilege also encourages "the free flow of information that is a necessary predicate for sound advice." *Murphy v. Tennessee Valley Auth.*, 571 F. Supp. 502, 506 (D. D.C. 1983). The privilege protects both information given by the client to the lawyer and the advice the

5

lawyer provides the client in return. *See id*.

**III. Analysis**

Many of plaintiff's arguments fall outside of the scope of the sole question before the court: whether HHS properly withheld the two documents it deemed as responsive to plaintiff's FOIA request. For example, in his most recent memorandum to the court, plaintiff cites *Gonzalez v. Raich*, 125 S. Ct. 2195 (2005), where the Supreme Court, using Commerce Clause analysis, upheld the constitutionality of the Controlled Substances Act in the face of California's Compassionate Use Act, which allowed certain individuals to possess or cultivate marijuana for medicinal purposes. Plaintiff analogizes *Raich* to the instant matter, arguing loosely that an examination of the FOIA documents will reveal that New York policy contradicts federal law. Though an interesting read, *Raich* sheds no light on the FOIA problem before this court.

Also unsuccessful is plaintiff's argument that, under *Christensen v. Harris County*, 529 U.S. 576, 120 S. Ct. 1655, 146 L. Ed. 2d 621 (2000), defendant's alleged implementation of a "clandestine . . . nonacquiescence policy" should act as a waiver of FOIA Exemption 5, because the policy announced in Ms. Richardson's June 5, 1996 memorandum is a "de facto regulation." Plaintiff's reliance on *Christensen*, which discusses how much deference courts should accord to an agency's interpretation of its own regulations—an issue entirely separate from whether documents qualify for FOIA Exemption 5—is misplaced. There is no case law to support plaintiff's argument.

In his memorandum of law, plaintiff also pointed to a letter from Freedom of Information Group Director Lee J. Jackson, dated March 30, 2004, which he argued was a "smoking gun" admission that additional FOIA-requested documents were not cited in defendant's motion papers.

At oral argument, however, both parties agreed that Director Jackson's letter concerned a *separate* request from the documents at issue in this case, and plaintiff withdrew this argument.

Under the law relevant to this case, the two documents withheld by HHS are clearly covered by the deliberative process privilege. They are "predecisional," as they were both created before Ms. Richardson communicated agency policy in the letter and memorandum identified by the parties. Indeed, plaintiff acknowledges that the policies adopted in Ms. Richardson's December 30, 1993 letter and June 5, 1996 memorandum were "based [on]" the documents to which he seeks access. (Pl.'s Mem. at 1.)

The documents are also "deliberative," because they contain tentative recommendations, analysis, and proposed draft revisions. The three-page draft was not final policy and, as it was forwarded to the General Counsel's office, was intended for "give-and-take." *See Coastal States*, 617 F.2d at 866. "Draft documents, by their very nature, are typically predecisional and deliberative. They 'reflect only the tentative view of their authors; views that might be altered or rejected upon further deliberation either by their authors or by superiors.'" *Exxon Corp. v. Dep't of Energy*, 585 F. Supp. 690, 698 (D. D.C. 1983) (quoting *Pennzoil Co. v. Dep't of Energy*, 1981 WL 1281, at *2 (D. Del. 1981)). The nine-page response from the Office of General Counsel was advisory in nature and also intended for give-and-take. To release these documents, which squarely qualify as predecisional and deliberative, would be to disclose non-final proposals that might mislead the public as to HHS's reasoning, which it is entitled to keep private in the spirit of free discussion in the policy-making process. *See Coastal States*, 617 F.2d at 866.

As the documents involved confidential matters exchanged between HHS, the client, and its Office of General Counsel, they are also protected by the attorney-client privilege. *See Nat'l Broad.*

*Co. v. United States Small Bus. Admin.*, 836 F. Supp. 121 (S.D.N.Y. 1993) (holding privilege applicable to request for legal advice and response exchanged between Chief Counsel of Investment and Deputy General Counsel of agency).

Nevertheless, plaintiff argues that, in accordance with *National Council of La Raza v. Department of Justice*, 411 F.3d 350 (2d Cir. 2005), the deliberative process and attorney-client privileges should be deemed inapplicable. In *National Council*, the plaintiff made a FOIA request for documents concerning a change in policy by the Department of Justice (DOJ) to permit enforcement of civil immigration laws by state and local entities. In addressing one of these documents on appeal, the Second Circuit held the deliberative process and attorney-client privileges did not apply because this document had been incorporated into DOJ policy. Indeed, deliberative process and attorney-client privileges no longer apply where an agency has decided "expressly to adopt or incorporate by reference [a] . . . memorandum previously covered by Exemption 5 in what would otherwise be a final opinion." *National Council*, 411 F.3d at 356 (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 161, 95 S. Ct. 1504, 44 L. Ed. 2d 29 (1975)).

Courts have set forth several reasons why the privileges are no longer necessary under these circumstances. With regard to the deliberative process privilege, where a formerly predecisional and deliberative document is incorporated by reference or becomes formal agency policy, it is the agency's responsibility to defend its reasoning, in which the public has an interest. *Id*. at 357 (quoting *Sears*, 421 U.S. at 161). Also, there is no longer any fear that disclosure would chill agency employees from expressing opinions, and an employee would likely be encouraged rather than discouraged by the public seeing that his or her opinion was adopted as official policy. *Id*. Likewise, where a document is referred to or adopted by the agency, there is no longer any need for the

attorney-client privilege, because the client's focus shifts from keeping open communication with the attorney to having to defend the adopted policy to the public. *See id*. at 360 (citing *Sears*, 421 U.S. at 161; *In re John Doe, Inc.*, 13 F.3d 633, 635–36 (2d Cir. 1994)).

In *National Council*, the Second Circuit held the privileges inapplicable to a particular memorandum because the Attorney General had made "repeated references" to it and used these references specifically to explain the legality of the DOJ's newly adopted policy. 411 F.3d at 357. Furthermore, the DOJ had used the memorandum "as the exclusive statement of, and justification for, its new policy." *Id*. The documents plaintiff seeks in this case, however, cannot be said to have been referred to or adopted by the agency. Plaintiff argues the opposite is apparent from the letter to New York City Human Resources Administration ("the Letter") and the memorandum to state Medicaid directors ("the Memorandum"), both from former HCFA Director Sally Richardson. However, neither the Letter nor the Memorandum references any other documents that were used to prepare them. The Letter, in providing advice on "the Federal role in the Medicaid program," explains in a largely factual manner several provisions of the Social Security Act and how New York law might work in concert with the federal provisions. The Memorandum's focus is to present a factual summary of federal law. It was sent to Medicaid directors in all states to explain the "rules governing the use of trusts by Medicaid applicants" as tightened by the Omnibus Budget Reconciliation Act of 1993. In both the Letter and Memorandum, Ms. Richardson presents summaries of federal Medicaid law and conclusions as to how states must, or may,[5] in other cases,

---

[5] The Letter and Memorandum contain both straight-forward summaries or interpretations of Medicaid law and suggestions as to how state law may comply. For example, the Memorandum states: "Section 1917(a) [of the Social Security Act] precludes States from placing liens on an individual's property." Then the Memorandum offers analysis: "However, . . . a potential personal injury settlement is not yet the plaintiff's property . . . . As such, a state could place a [third party

comply with these laws. There is no "substantive reasoning" presented to explain Ms. Richardson's comments, and the main references in the correspondence are to sections in the Social Security Act, which any reader can access. *See National Council*, 411 F.3d at 359 (citing *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 95 S. Ct. 1491, 44 L. Ed. 2d 57 (1975)) (noting no adoption or incorporation by reference in *Grumman*, where plaintiff sought reports used by Renegotiation Board to issue a decision, which had no "substantive reasoning or even a reference to the reports"). There is no reason to conclude that these documents incorporate by reference or specifically adopt any of the draft documents or commentaries that may have preceded them. Indeed, "[m]ere reliance on a document's conclusions does not necessarily involve reliance on a document's analysis; both will ordinarily be needed before a court may properly find adoption or incorporation by reference." *National Council*, 411 F.3d at 358. Therefore, the deliberative process and attorney-client privileges stand with respect to the documents sought by plaintiff.

Accordingly, the court finds that HHS properly withheld the documents under Exemption 5. The court does not find it necessary to conduct an in camera review of the documents because defendant provides sufficient detail in its papers. *Cf. Grand Cent. P'ship*, 166 F.3d at 478 (conducting in camera review where affidavit had "insufficient specificity of detail"); *Vaughn v. Rosen*, 484 F.2d 820, 823 (D.C. Cir. 1973) (ordering more detailed affidavit for court inspection, where affidavit provided "did not illuminate or reveal the contents of the information sought, but rather set forth in conclusory terms" opinion that documents sought were covered under FOIA exemptions). Contrary to plaintiff's contentions that HHS has not submitted an affidavit itemizing

---

liability] lien on any proceeds in a trust which could be used to pay for medical care covered in the state's plan, *provided there were state laws allowing this*."

the withheld documents or articulating how the FOIA exemptions apply, HHS has submitted adequate papers. Defendant's motion papers include a Declaration of Rosario Cirrincione, Director of the Freedom of Information / Privacy Acts Division, Office of the Assistant Secretary for Public Affairs, HHS. In her job capacity, Ms. Cirrincione responds to FOIA requests. The declaration states page length, sender, and recipient information for both withheld documents. Furthermore, in stating that the first document seeks "review and comment" on an attached three-page draft and that the second document is a response from the Office of General Counsel with "legal advice, analysis, and proposed draft revisions," the declaration describes the documents as much as possible without actually revealing their substantive contents. In *Vaughn*, the D.C. Circuit was especially troubled by the fact that the defendant claimed three separate FOIA exemptions as to a large quantity of documents, without specifying which privileges applied to which groups of documents. 484 F.2d at 827. In contrast to *Vaughn*, the declaration provided by defendant in this case adequately explains the contents of the two documents withheld and reveals enough information to make it clear that the deliberative process and attorney-client privileges apply to both.

The court is further unpersuaded by plaintiff's argument that the court should conduct an in camera review in light of the "fraud upon the court" standard pronounced in *Chambers v. Nasco*, 501 U.S. 32, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991). Plaintiff argues that HHS may have known that "inaccurate information had been intentionally provided to the New York State Court of Appeals and the United States Supreme Court that the Medicaid 'priority' standard was the federal Medicaid standard." (Pl.'s Mem. at 23.) Plaintiff thus asks the court to review the documents in camera in order to "police the accuracy of sworn statements . . . [and] protect the integrity of the judicial process when false representations are made to judges." (*Id*. at 24.) The Court in *Chambers*

"explore[d] the scope of the inherent power of a federal court to sanction a litigant for bad-faith conduct." 501 U.S. at 35. It did not create an all-encompassing police power for federal courts in the FOIA context[6] and does not suggest that this court should spend scarce judicial resources for in camera review where defendant's affidavits are sufficiently descriptive and make clear that the privileges asserted apply.

**IV. Conclusion**

For the reasons set forth above, the court finds defendant's withholding of documents proper under the FOIA and grants defendant's motion for summary judgment. This action is dismissed.

SO ORDERED.

DATED: Brooklyn, New York
August 1, 2005

_____/s/_____
DORA L. IRIZARRY
United States District Judge

---

[6] *Chambers* discusses the "inherent power of the federal courts" in several contexts, including the powers to punish incidents of contempt, vacate their own judgments, conduct independent investigations if the court may have been the victim of fraud, bar disruptive defendants from trial, and assess attorney's fees and sanctions. Nevertheless, the Court cautions: "Because of their very potency, inherent powers must be exercised with restraint and discretion." 501 U.S. at 44. The court does have the power to conduct an in camera review. However, it is not warranted under the circumstances in this case.